UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-50568-CAG |
| | ) | |
| DLOUX PROPERTIES, LLC | ) | CHAPTER 11 |
| | ) | |
| DEBTOR | ) | |

**DLOUX PROPERTIES, LLC'S SECOND AMENDED DISCLOSURE STATEMENT**

NOTICE OF VOTING AND OBJECTION DEADLINES AND
NOTICE OF CONFIRMATION HEARING

A copy of the Debtor's Amended Plan ("Plan"), and this Second Amended Disclosure Statement ("Disclosure Statement") are included in this Plan Packet. If you are a holder of a claim that is impaired by the Plan, you have the right to vote by the enclosed ballot. **The deadline for receipt of your ballot is December 4, 2023 by 5:00 p.m CST.** Late ballots may not be counted.

This Disclosure Statement as amended was approved by the Bankruptcy Court on November 1, 2023. Please read the enclosed Plan and Disclosure Statement in its entirely before you vote. You may wish to retain your own attorney or accountant to assist you in determining whether to accept or reject the proposed plan. Neither the Debtor nor its counsel can give you advice on how to vote.

The Plan will not be binding on any person unless the United States Bankruptcy Court enters an order confirming the Plan. There are many requirements for confirmation of a plan. These are contained in § 1129 of the Bankruptcy Code. One of the requirements is that at lease one class of impaired claims votes to accept the Plan, by both a two-thirds majority (measured by the dollar amounts of claims that are voted) and a simple majority (measured by persons who vote). Accordingly, it is important that you return your ballot. Mailing instructions are contained on the ballot.

You may also file a written objection to confirmation of the Plan. Written objections must be filed with the Clerk of the Bankruptcy Court and also served on Debtors' counsel. **The Deadline to file a written objection is December 4, 2023 by 5:00 p.m. CST. A vote rejecting the plan is not the same as an objection to the plan.**

**A hearing on whether to confirm the Plan has been scheduled for December 13, 2023 at 1:30 p.m. The hearing will be held at the S.A. Courtroom 3, Hipolito F. Garcia Fed. Bldg. & Courthouse, 615 E. Houston St., San Antonio, TX 78205 before the Honorable Craig A. Gargotta.**

All ballots and objections to confirmation must be filed with the Clerk of the United States Bankruptcy Court for the Western District of Texas and also served on counsel for the Debtor whose addresses are as follow:

**United States Bankruptcy Court
615 E. Houston Street, Rm 597
San Antonio, Texas 78205**

**Dean W. Greer
West & West Attorneys at Law
2929 Mossrock, Suite 204
San Antonio, Texas 78230
Facsimile No. 210.340.2577
Email: dean@dwgreerlaw.com**

**Ballots may be delivered by facsimile, hand delivered, mail and/or email as noted above.**

This Disclosure Statement Is Submitted to All Creditors of the Debtor Entitled to Vote on the Plan of Reorganization Herein Described and Contains Information That May Affect Your Decision to Accept or Reject the Debtor's Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code. This Disclosure Statement Is Intended to Provide Adequate Information as Required by the Bankruptcy Code as to the Debtor's Plan of Reorganization. All Creditors Are Urged to Read the Disclosure Statement and Attachments with Care and in Their Entirety. This Disclosure Statement may Contains Forward-looking

Statements Based Primarily on the Current Expectations of the Debtor and Projections about future events and financial trends affecting the financial condition of the Debtor's and the Reorganized Debtor's business.

The Terms of the Plan Govern in the Event of Any Inconsistency with the Plan Summary in this Disclosure Statement. All Exhibits to this Disclosure Statement Are Incorporated into and Are a Part of this Disclosure Statement as If Set Forth in Full Herein.

The Information in this Disclosure Statement Is Being Provided Solely for Purposes of Voting to Accept or Reject the Plan. Nothing in this Disclosure Statement May Be Used by Any Entity for Any Other Purpose.

## I.
## INTRODUCTION

This is the Second Amended Disclosure Statement (the "Disclosure Statement") in the chapter 11 case of Dloux Properties, LLC (Hereafter collectively referred to as the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor. A full copy of the Plan accompanies this Disclosure Statement. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed at pages 6-7 of this Disclosure Statement. All administrative claims, priority claims, and unsecured claims will be paid in full. The secured claim will be paid from the remaining proceeds. Equity holders will not receive any monies unless there are excess monies after payment of all creditors.

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed).
- Who can vote on or object to the Plan
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan.
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
- The effect of confirmation of the Plan.

## II.
## BACKGROUND

### A. Description and History of the Debtor's Business

Dloux Properties, LLC is a Texas Limited Liability Company, authorized to do business in Texas. The Debtor is the owner of 74.5 acres of land in Gillespie County, Texas. The members of the Debtor are Juan Iribarren, M.D. ("Iribarren") and Dloux Properties Holding Trust ("Holding Trust"). Steven Robinson ("Robinson") is the Trustee.

In 2017, Robinson and Iribarren decided to enter into a joint venture to build an event center on the 74.5 acres which was owned by Robinson. Robinson conveyed the 74.5-acre tract to the Debtor. In return for this conveyance, Iribarren agreed to provide capital to pay a debt of Robinson and finance the venture for an amount up to one million five hundred thousand dollars. Additionally, Iribarren agreed to take on the burden of responsibility as managing member of the venture.

### B. Insiders of the Debtor

Iribarren owns 51% and Holding Trust owns 49%.

### C. Management of the Debtor Before and During the Bankruptcy

The management of the Debtor has not changed before or during the bankruptcy filing. Iribarren has always been the managing member.

### D. Events leading to Chapter 11 filing

Between 2017 and 2019, the Debtor, with funds loaned by Iribarren in the approximate amount of one million two hundred thousand dollars, the Debtor built an event center and a cabin. In August 2019, after Iribarren had invested the $1.2 million and in the middle of construction of the Event Center, Robinson advised the Debtor and Iribarren that he intended to use the cabin as his residence. In fact, Robinson used all the property for his personal use including the Event Center. This effectively shut down further construction.

At an impasse, litigation ensued in both Jefferson County and Gillespie County as the Debtor sought to retake possession of the property and complete the project. For over three years, the project languished because Robinson would not allow any work to be done on the property. Any attempts were met with threats of violence. Contractors would not go on the property for fear of their employees being harmed. Work that had been done was affected by the weather. Without income, Iribarren was forced to pay all the property taxes on the property. More importantly, Robinson filed a lis pendens on the property negating the Debtor's ability to sell the property. This bankruptcy ensued.

Robinson has a different interpretation of the facts. Robinson asserts that the deeding of the 74.5 acres to the Debtor was procured by fraud perpetrated by Mrs. Nichols of the law firm Orgain, Bell & Tucker. According to Robinson, Mrs. Nichols was not acting as his attorney but was the attorney for Dr. Iribarren. Because of this alleged fraud, the 74.5 acres was transferred into an irrevocable trust of Robinson and then the Trust transferred the 74.5 acres to the Debtor. The Debtor disagrees with these allegations. That said, Robinson through his counsel has admitted that the 74.5 acres is owned by the Debtor.

Robinson further asserts that Iribarren breached his fiduciary duty, used his position as an informal fiduciary to manipulate Stevenson fraudulently; that Iribarren

had no authority to force the Debtor to borrow money from Iribarren; and that Iribarren mismanaged the Debtor including stopping construction which harmed the Debtor. The Debtor disagrees with these allegations.

Finally, Robinson asserts that Juan Iribarren, violated the terms of the Operating Agreement. The lawsuit regarding ownership of certain land has been pending in the District Court in Gillespie County, Texas since 2019. Land ownership is under dispute and therefore, Debtor has no right or legal claim to this land. A copy if the Notice of Lis Pendens is attached hereto as Exhibit "A" and incorporated herein for all purposes. Until the state court proceeding is resolved this Chapter 11 case cannot be confirmed. Again the Debtor denies these allegations.

On September 5, 2023, Robinson filed his Proof of Claim asserting damages of $2,500,000 for theft of property. (Proof of Claim No. 1). Debtor filed its Objection to the Claim of Robinson (Doc. #20). Under the Objection, Debtor asserts that Robinson has no standing to file a claim because it was Robinson's Trust that transferred the 745 acres to the Debtor, not Robinson individually, that Texas does not recognize "theft of real property" and finally the Proof of Claim did not support or explain the damages of $2,500,000. Robinson has filed a response and the objection is pending.

E. **The Property**

Debtor owns 74.5 acres of land with improvements of approximate 10,000 square foot event center under the roof. The improvement, a two-story Spanish Colonial Style Villa compound overseeing the Valley of Salt Branch Loop, located at 4079 Salt Branch Road, outside of Fredericksburg, Texas. The hyperlink below shows you pictures of the 74.5 acres that while beautiful, does not do it justice. Mark Connolly of Kuper Sothebys Realty is listing the property at $2,186,000. This is a realistic price and is supported by the current market.

https://photos.app.goo.gl/JMwSvNF9vBAtH8VT7

F. **Significant Events During the Bankruptcy Case**
 1. **West & West**

On June 12, 2023, the Court entered an order approving the employment of West & West as attorneys for the Debtor.

2.  **Appointment of Realtor**

Debtor filed its application to employ Kuper Sothebys Realty as real estate broker to sell the property. On June 12, 2023, the Court approved the appointment of Kuper Sothebys Realty.

3.  **Limited Operations**

During the bankruptcy, the Debtor has prepared the Property for market. This has included removal of remaining items inside/outside the improvements, cleaning, and basic maintenance of indoors and perimeter of the improvements. Except for preparing the Property for market, the Debtor is not operating.

G.  **Projected Recovery of Avoidable Transfers**

Debtor is not aware of any avoidable transfers or preferential payments that have not otherwise been resolved as of this filing. If such is determined otherwise, it will be disclosed.

H.  **Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article 5 of the Plan.

### III.
### SUMMARY OF THE PLAN OF REORGANIZATION

A.  **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is

confirmed, your recovery will be limited to the amount provided by the Plan.

1. **Administrative Expenses**.

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

All administrative fees shall be paid from the sale of the 74.5 acres. The administrative fees are attorney fees to West & West Attorneys at Law, P.C. (estimated at $20,000 less any retainer and United States Trustee fees which have not been calculated.

2. **Class 1 Priority Taxes**

The only claim under this category is the 2023 ad valorem taxes of Gillespie County. Once assessed, Debtor will pay the taxes in full from the sale of the Debtor's property. This class is unimpaired.

3. **Class 2 Secured claim of Dr. Juan Iribarren**

Debtor is indebted to Dr. Juan Iribarren in the amount of $1,294,738. The debt is secured by the 74.5 acres of land with improvements in Gillespie County, Texas. Debtor intends to sell the 74.5 acres which has an estimated value of $2,186,000. Dr. Iribarren's lien will attach to the proceeds of sale. From these proceeds all administrative claims, all priority claims and all allowed unsecured claims will be paid or sufficient monies retained in escrow to make those payments. The balance of the monies will be paid to Dr. Iribarren until his debt is paid in full. If there are any monies remaining, it will be paid to the equity holders. Debtor will pay no interest on this claim. This class is impaired.

4. **Class 3 Unsecured Creditors**

There are only two unsecured creditors: Cavett, Turner & Wyble, LLP ($2,050.00) and Keller Enterprises ($9,999.20). Dr. Iribarren has agreed to subordinate his secured

claim to ensure that priority, administrative and unsecured creditors claim are paid in full.

    5.    **Class 4 Equity Owners-Unimpaired**

The Debtor has two members: Dr. Juan Iribarren and Dloux Properties Holding Trust. To the extent there is any "remaining cash", which now includes unsecured creditors, the equity holders will be paid their pro rata share of the fund in accordance with the Debtor's company agreement.

**B.    Date of Payments**

The payments to creditors will occur within 30 days after the sale of the 74.5 acres is consummated and funded.

**C.    Means of Implementing the Plan**

Payments and distributions under the Plan will be funded from the proceeds of the sale of the 74.5 acres. Debtor shall have one year from the confirmation date to sell the 74.5 acres. If there is no sale, Debtor shall file with the Bankruptcy Court notice that a sale has not occurred. This notice shall be filed within five (5) days of the one-year anniversary of the Effective Date. The Court shall schedule a hearing to determine whether the case should remain in a chapter 11, converted to a chapter 7, or dismissed.

**D.    Risk Factors**

There are risk that the 74.5 acre tract will not be sold. That is not likely given the nature of the property and the realistic sales price of $2,186,000. More importantly, Dr. Iribarren is subordinating his secured lien position to ensure that all administrative claims, priority claims and allowed unsecured claims will be paid prior to him being paid. Thus, the only person potentially harmed is Dr. Iribarren who may or may not receive full payment.

**F.    Executory Contracts and Unexpired Leases**
    None

**G.    Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/or Advisors.*

The Plan provides for the distribution of the proceeds from the sale of the Debtor's assets. Holders of claims and interests should consult their own tax advisers regarding the tax consequences of the Plan.

## IV.
## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in § 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object.

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that only class 2 is impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that unclassified classes are unimpaired.

### 1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless

the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was September 6, 2023.***

2.  ***What Is an Impaired Claim or Impaired Equity Interest?***

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.  ***Who is Not Entitled to Vote.***

- The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain

any value under the Plan;

- administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement].***

    4.    *Who Can Vote in More Than One Class.*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

**B.    Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

    1.    *Votes Necessary for a Class to Accept the Plan.*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

    2.    *Treatment of Non-accepting Classes.*

Even if one or more impaired classes reject the Plan, the Court may nonetheless

confirm the Plan if the non-accepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair" and "equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

C.      **Liquidation Analysis.**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Since the Plan is a liquidating plan and the Debtor's assets are to be sold, the Debtor believes creditors holding allowed claims will receive as much as they would in a hypothetical chapter 7 case.

D.      **Feasibility.**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes the Plan is feasible because it is a liquidating plan, all assets have been sold and the plan provides for distribution of all sales proceeds.

V.
**EFFECT OF CONFIRMATION OF PLAN**

A.      **No Discharge.**

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

B.      **Modification of the Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan.

However, the Court may require a new disclosure statement and/or re-voting on the Plan.

## C.      Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

Dated this the 2nd day of November 2023

DLOUX PROPERTIES, LLC

By:     /s/ Juan Iribarren, MD
        Dr. Juan Iribarren,
        Managing Member


WEST & WEST ATTORNEYS AT LAW, P.C.

By:     /s/Dean W. Greer
        Dean W. Greer
        2929 Mossrock, Suite 204
        San Antonio, Texas 78230
        Telephone: (210) 342-7100
        Facsimile: (210) 340-2577
        E-mail: dean@dwgreerlaw.com
        Texas Bar No. 08414100
        Attorney for Debtor